**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HARLEY-DAVIDSON FINANCIAL SERVICES, INC.** | ) ) ) |
| **Plaintiff,** | ) ) |
| **vs.** | ) ) |
| | ) **Case No. 06 C 404** |
| **BANK OF AMERICA, N.A.,** | ) ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Harley-Davidson Financial Services, Inc. (HDFS) filed a complaint against

Bank of America, N.A. (BOA) for violating the Illinois Trade Secrets Act, 765 ILCS 1065.

BOA filed a three-count counterclaim, alleging tortious interference with contract (Count 1),

tortious interference with prospective economic advantage (Count 2), and violation of the Illinois

Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/2.

HDFS now seeks to dismiss BOA's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) and

9(b). For the reasons stated below, the Court grants HDFS' motion to dismiss as to Count 3 but

otherwise denies the motion.

**Factual Background**

For the purposes of a motion to dismiss, the Court accepts as true the following facts

from the counterclaim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). HDFS, a subsidiary

of Harley-Davidson, Inc., provides retail and commercial financing and insurance products to

dealers and end users of Harley-Davidson motorcycles and other recreational vehicles.

Countercl. ¶ 3. In late 2004, BOA, a national banking association, launched a motorcycle

financing program through its Dealer Financial Services Group to provide indirect and wholesale

lending contracts to Harley-Davidson dealers, offering monetary incentives as an inducement.

*Id.* ¶¶ 5, 6, 8. After HDFS sued BOA for allegedly acquiring, disclosing, and using HDFS' trade

secrets, BOA counterclaimed, alleging that HDFS maliciously engaged in a course of conduct

calculated to drive BOA out of the Harley-Davidson dealer and purchaser financing market by

interfering with BOA's valid contractual and prospective business relationships. *Id.* ¶¶ 10-12.

More specifically, BOA alleges that HDFS made false statements and misrepresentations to

Harley-Davidson dealers and customers that called into question BOA's viability, reliability,

intent, and ability to deliver its products and services. *Id.* ¶ 12(a)-(h); Def.'s Resp. at 3.

## Discussion

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, not

its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A complaint may

not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957). Though the plaintiff is not required to allege all of the facts

involved in the claim and can plead conclusions, *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.

2002), the plaintiff must include enough "operative facts" to provide the defendant with fair

notice of its claims. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998), *Perkins*

*v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

## A.  Count 1: tortious interference with contract

HDFS contends that BOA has failed to state a claim for tortious interference with

contract. A claim for tortious interference with contract requires

> (1) the existence of a valid and enforceable contract between the plaintiff and
> another; (2) the defendant's awareness of this contractual relation; (3) the

> defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*Int'l Marketing, Ltd. v. Archer-Daniels Midland Co., Inc.*, 192 F.3d 724 (7th Cir. 1999).

BOA sufficiently alleges the five elements in its counterclaim. First, it alleges the existence of valid and enforceable contracts between BOA and Harley-Davidson dealers. Countercl. ¶ 8. Second, it alleges that HDFS knew of these contracts. *Id.* ¶ 10. Third, BOA alleges that HDFS wrongfully induced Harley-Davidson dealers to cease doing business with BOA under the terms of their contractual relationships with BOA, thereby (fourth) resulting in breach. *Id.* ¶ 17. Fifth, BOA also alleges that it suffered economic and reputational damage. *Id.* ¶ 19.

HDFS argues that Count 1 is insufficient because BOA did not specify the contract terms that it says were breached. Such specificity is not required under the notice pleading standard used in federal courts. *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). HDFS also contends that because BOA's allegations focus on HDFS' alleged inducement of the dealers, not the dealers' alleged breach, BOA did not allege a breach of contract. HDFS argues that a breach cannot be inferred from the complaint; it argues that the court should "'take all well-pleaded facts as true, but [should] not strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint.'" *Beam v. IPCO Corp.*, 838 F.2d 242, 245 n.3 (7th Cir. 1988) (quoting *Coates v. Ill. State Bd. of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977)). The contractual breach underlying BOA's claim is, however, readily apparent from the complaint; no straining or stretching is needed to find it. Specifically, BOA alleges in paragraphs 14 and 15 that it had contracts with dealers that it expected to maintain, and it alleges in paragraphs 17 and 18 that HDFS prevented one or more contracts from being

completed and induced some dealers to stop doing business with BOA.  This is sufficient to allege an underlying breach of contract; HDFS can obtain the particulars in discovery.  The Court therefore denies HDFS' motion to dismiss Count 1.

**B.      Count 2: tortious interference with prospective economic advantage**

HDFS also contends that BOA has failed to state a claim for tortious interference with prospective economic advantage.  A claim for tortious interference with prospective economic advantage requires: "(1) [a] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of this expectancy; (3) purposeful interference by the defendant that prevents the expectancy from being fulfilled; and (4) damages to the plaintiff resulting from the interference." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998).  BOA has sufficiently alleged these elements.  First, BOA alleges that it had a reasonable expectation of entering into valid business relationships with Harley-Davidson dealers and customers.  Countercl. ¶ 21. Second, BOA alleges that HDFS knew of this expectancy.  *Id.* ¶ 22.  Third, BOA alleges that HDFS purposely and maliciously interfered to prevent this expectancy from being fulfilled.  *Id.* ¶ 23.  Fourth, BOA alleges that this interference caused it to suffer damage.  *Id.* ¶ 24.

HDFS argues that by using the words "interfering to prevent" rather than "prevented", *Id.* ¶ 23, BOA did not adequately plead interference.  Word games where the defendant "merely 'attempts to nit-pick the complaint to death,'" *Skolnick v. Corr. Med. Serv., Inc.*, No. 99 C 3155, 1999 WL 1032782, at *3 (N.D. Ill. Nov. 12, 1999), do not provide a basis to grant a motion to dismiss.

HDFS also contends that Count 2 fails because BOA did not allege that the claimed interference was unjustified or wrongful.  *Int'l Marketing*, 192 F.3d at 731-32 (dismissing tortious interference with prospective economic advantage claim because the court deemed the

4

alleged conduct to be non-actionable). More specifically, HDFS argues that because BOA did

not allege that the alleged statements were made with ill-will or spite, HDFS is protected by

competitor's privilege, because "a competitor is ineligible for the competition defense only if its

conduct is motivated solely by spite or ill will." *Id.* at 731, citing *Stolberg v. Brauvin Realty*

*Servs., Inc.*, 295 Ill. App. 3d 17, 34 n.2, 691 N.E.2d 834, 846 n.2 (1998). *Int'l Marketing* is

distinguishable. The plaintiff there simply accused the defendant of "improper motive," a phrase

the court deemed "too broad and ambiguous for [it] to read as 'ill will' or 'spite,' especially

where nothing else in the complaint supplies a reason to believe that this is the sort of improper

motive [the plaintiff] had in mind." *Int'l Marketing,* 192 F.3d at 732. In contrast, in the case at

hand, though BOA did not use the words "ill will" or "spite," wrongful motive is readily inferred

from BOA's allegation that HDFS purposefully and maliciously spread false representations to

Harley-Davidson dealers and customers. Countercl. ¶¶ 12, 23.

HDFS further argues that the alleged statements are opinions, truthful statements, and/or

predictions of future events and therefore are not actionable. *Kempner Mobile Elec., Inc. v.*

*Southwestern Bell Mobile Sys.*, 428 F.3d 706, 716 (7th Cir. 2005) (truthful information is not

actionable on a claim for interference with prospective relations); *Soderlund Bros, Inc. v.*

*Carrier Corp.*, 278 Ill. App. 3d 606, 620, 663 N.E.2d 1, 10-11 (1995) (opinions are not

actionable as commercial disparagement). Whether a statement is properly categorized as fact

(true or false) or opinion is not as simple as HDFS suggests. In fact, within its own motion,

HDFS labels as a "truthful statement" paragraph 12(h) of BOA's counterclaim, in which BOA

alleges that HDFS employees told dealers that BOA would directly solicit end-user customers to

buy additional bank products. HDFS uses this statement to support its argument that the tortious

interference claim fails, *see* HDFS Mem. at 8, yet it later classifies the same statement as merely

a "statement of opinion or prediction of future events" to argue that the ICFA claim fails. *See id.* at 10. That HDFS can so easily classify a statement as both truth and opinion undercuts its assertion that the Court should dismiss BOA's allegations on the ground the statement is an opinion. For present purposes, the Court is required to draw reasonable inferences in BOA's favor.

In addition, under Illinois law, "opinions… may be considered as factual representations if it would be reasonable for the other party to treat it as such." *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1996). Determining whether the Harley-Davidson dealers and customers to whom the alleged statements were made understood them as statements of fact requires an evaluation of the merits that goes beyond the scope of a proper inquiry under Rule 12(b)(6). *See Gibson*, 910 F.2d at 1520.

Finally, HDFS' contention that the statements must be true because BOA did not specifically allege them to be false must be evaluated in the context of the counterclaim as a whole. Though BOA did not use the word "false" in paragraph 12(h), that cannot in the present context be read as a concession that the statements were true. There are enough allegations of false statements of fact within the counterclaim, *see*, *e.g.,* Countercl. ¶ 12(a)-(d), to satisfy the requirements of a claim for tortious interference with prospective economic advantage. The Court denies the motion to dismiss Count 2.

## C.     Count 3:  Illinois Consumer Fraud Act

The Illinois Consumer Fraud Act prohibits the "employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact… in the conduct of any trade or commerce." 815 ILCS 505/2. The statute's

primary concern is to protect consumers. *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 323 (N.D.Ill. 1995).

The ICFA defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use of that of a member of his household." 815 ILCS 505/1(e). A "person" can be a corporation or other business entity, as well as an individual. 815 ILCS 505/1(c).

If an ICFA claim involves a dispute between two businesses that do not consume each other's products, there must be some showing that the alleged conduct involves "'trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 458, 654 N.E.2d 1109, 1115 (1995) (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33, 41 (1989)). In other words, to prevail, BOA "must establish a nexus to consumer protection concerns in pleading its claim under the [ICFA]," *Nakajima All Co. Ltd. v. SL Ventures Corp.*, No. 00 C 6594, 2001 WL 641415, at *8 (N.D. Ill. Jun. 4, 2001), as the ICFA "does not authorize a suit by a non-consumer where these is no injury to consumers." *Learning Curve Toys, L.P. v. PlayWood Toys, Inc.*, No. 94 C 6884, 2000 WL 343497, at *2 (N.D. Ill. Mar. 31, 2000).

BOA argues that it has adequately alleged a consumer nexus by stating that Harley-Davidson dealers – i.e. the "consuming public" – were affected by HDFS' deceptive conduct, *see* Countercl. ¶ 33, citing *Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.*, No. 94 C 6178, 1996 WL 568794, at *1 (N.D. Ill., Sept. 30, 1996), for support. The Court disagrees. Misrepresentations to resellers are too indirect to satisfy the consumer nexus requirement. *Alton Indus. Group Ltd. v. East Precision Measuring Tool Co.*, No. 05 C 0890, 2005 U.S. Dist. LEXIS

15157, at *8 (N.D. Ill. Jul. 15, 2005)[1] (alleged misrepresentations to retailers and mail order companies are too indirect to implicate consumer protection concerns) (citing *ABC v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998) (holding that defendant's letters were not directed to the market generally and had no direct effect on consumers and therefore did not provide the required consumer nexus)). Not only do "'alleged statements to distributors and retailers not constitute the required connection to consumers,' claims that such statements 'implicate consumer protection concerns by wrongfully diverting sales from [BOA]' are simply 'far too indirect to satisfy the consumer nexus requirements.'" *Nakajima All Co. Ltd.*, 2001 WL 641415, at *4, quoting *Republic Tobacco, L.P. v. North Atl. Trading Co.*, 98 C 4011, 1999 WL 261712, at *9 (N.D. Ill. Apr. 9, 1999). *See also*, *MidAmerican Energy Co. v. Utility Res. Corp.*, No. 03 C 2313, 2003 WL 22359526, at *5 (N.D. Ill. Oct. 14, 2003) (consumer protection concerns not implicated because plaintiff did not allege that defendant made a misrepresentation to the general public or to any actual or potential customers of plaintiff who were not also clients of defendant). Moreover, the argument that consumers eventually may be affected by HDFS' conduct because it could affect what they ultimately purchase fails; "'[a]lmost every product sold by one commercial party to another will ultimately be sold to or otherwise effect [sic] a customer.'" *Alton Indus. Group*, 2005 U.S. Dist. LEXIS 15157, at *9 (quoting *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807 (N.D. Ill. 1996)).

*Second Chance Body Armor*, the single, unreported decision that BOA cites in support of the proposition that a competitor's misrepresentations can be connected to consumer protection concerns, is distinguishable. In that case, the court concluded that the defendant's use of the plaintiff's trademark in marketing and advertising its own safety equipment involved consumer

---

[1] No Westlaw citation is available for this decision.

protection concerns because the allegedly "false and deceptive descriptions" caused "confusion, deception, and mistake in the field of safety equipment." *Second Chance Body Armor*, 1996 WL 568794, at *1-2. The court's rationale is understandable in view of the fact that public safety was at issue. In the case at hand, however, similar considerations do not exist. Rather, the disagreement between BOA and HDFS is "a simple private business dispute that [does not] implicate consumer protection concerns." *MidAmerican Energy Co.*, 2003 WL 22359526, at *5. For these reasons, the Court grants the motion to dismiss as to Count 3.

**D.     Rule 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud or mistake be alleged with particularity. HDFS argues that because BOA alleged fraud in each of its claims, the heightened pleading requirement of Rule 9(b) applies to all of the claims and requires their dismissal. The Court need not address this issue. The same allegations that HDFS cites use the term "fraud" in the disjunctive, as an alternative to deception, intimidation, and deliberate disparagement, none of which requires particularized pleading. In short, the fraud references are in no way necessary to support the claims that have otherwise survived HDFS' motion.

**Conclusion**

For the reasons stated above, the Court denies HDFS' motion to dismiss as to Counts 1 and 2 of the counterclaim and grants the motion as to Count 3 [docket no. 30]. HDFS is directed to answer Counts 1 and 2 on or before August 10, 2006.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   July 31, 2006

9